# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| OFFICE CAREERS, | No. 60252-1-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF LABOR AND INDUSTRIES, | PUBLISHED OPINION |
| Respondent. | |

LEE, J. — Office Careers, a vocational school, appeals the superior court's findings of fact and conclusions of law and judgment affirming a decision and order from the Board of Industrial Insurance Appeals (BIIA). Specifically, Office Careers argues that the superior court erred in affirming the BIIA's determination that the one-year statute of limitations set forth in RCW 51.32.240(1)(a) did not apply to the Department of Labor and Industries' (DLI) ability to recoup overpayments made to Office Careers for services provided to injured workers. Additionally, Office Careers argues that the superior court erred in affirming partial summary judgment in favor of DLI regarding DLI's termination of Office Careers' provider number.

We hold that the one-year statute of limitations stated in RCW 51.32.240(1)(a) for repayment of benefits does not apply because DLI was not seeking recovery of "benefits." Also, because Office Careers filed a non-opposition response to DLI's motion for partial summary judgment on DLI's termination of Office Careers' provider number and because Office Careers

No. 60252-1-II

fails to demonstrate a genuine issue of material fact on this issue, partial summary judgment in favor of DLI was appropriate. Accordingly, we affirm the superior court.

FACTS

A. BACKGROUND

One of the goals of the Washington Industrial Insurance Act (IIA), Title 51 RCW, is "to enable [an] injured worker to become employable at gainful employment." RCW 51.32.095(1). Pursuant to this goal, the legislature has authorized DLI to contract with third-party providers to offer services to injured workers who are unable to return to their permanent work. RCW 51.32.095; RCW 51.04.030(1). This includes contracting with public or private vocational schools that teach workers new "skills to become employable." Clerk's Papers (CP) at 318; *see generally* RCW 51.32.095(1). Providers of vocational rehabilitation services are considered health service providers. RCW 51.08.095; RCW 51.36.110.

DLI is required to "establish criteria to monitor the quality and effectiveness of rehabilitation services provided by the individuals and organizations." RCW 51.32.095(9). Further, "[t]he state fund[1] must make referrals for vocational rehabilitation services based on these performance criteria." RCW 51.32.095(9); *see generally* RCW 51.36.100, .110.

DLI is authorized to audit its vocational service providers. RCW 51.36.100, .110. A provider is liable for any excess payments it receives from DLI, including interest on those excess payments. RCW 51.48.260.

---

[1] "'State fund' means those funds held by the state or any agency thereof for the purposes of this title." RCW 51.08.175.

Office Careers is a private vocational school licensed by the Workforce Coordination Training Board. Office Careers offers general office training, including courses in accounting, medical coding and billing, and hospitality. DLI has approved Office Careers as a provider of vocational services to injured workers since 2010. Between 2010 and 2020, DLI approved approximately 85 workers per year to receive training at Office Careers. Office Careers' average tuition rate was $12,300, and between 2015 and 2020, DLI paid more than $1 million annually to Office Careers for worker education services.

B.    AUDITS

1.    First Audit

In June 2019, DLI initiated an audit of Office Careers.[2] The audit period ran from July 1, 2015, to June 30, 2018. DLI reviewed "records requested by [DLI] and received from Office Careers, along with documentation available in [DLI's] computer databases, billing, and imaging systems." CP at 954.

During the audit, in response to DLI's requests for information, Office Careers provided few or incomplete records. For instance, DLI requested records on workers "who failed a program due to documented failure to meet performance criteria as it relates to learning the skills (as opposed to being based primarily on attendance and/or behavioral issues)." CP at 955-56. Office Careers provided a list of 36 names. Supporting documentation was provided for only seven of

---

[2] DLI received concerns about Office Careers from workers, DLI staff, and vocational counselors as far back as 2014. Specifically, "concerns raised included allegations that the school has no entrance standards or requirements, does not provide objective documentation of skills acquisition, and that some students receive certificates of completion without having demonstrated that they gained skills necessary for employment." CP at 954. Between 2014 and 2019, DLI attempted to work with Office Careers to address concerns but saw no evidence of change.

the workers on the list, and all but one worker failed due to attendance and/or behavioral issues, not for failure to meet performance criteria.

DLI also requested information on Office Careers' graduation requirements, including the "minimum words per minute ([WPM]) [typing] requirement." CP at 958. Office Careers responded that its students needed to achieve a typing speed of 20 WPM. DLI noted that a typing speed of 20 WPM is considered low by most employers who hire for a worker's typing skills. A typing speed of 40 WPM is considered average. Additionally, upon review of 13 workers who graduated from Office Careers with a certificate of completion, DLI discovered that three workers did not actually meet Office Careers' minimum required typing speed despite receiving a certificate of completion.

DLI requested the names of workers who completed an Office Careers program and were subsequently employed. Office Careers provided a list of 15 names. DLI had identified that 388 workers had attended one of Office Careers' programs during the audit period. Thus, based on Office Careers' provision of the 15 names and the "lack of other data," DLI concluded that Office Careers had "an extremely low [job] placement rate" of 3.9 percent. CP at 959.

DLI also reviewed the "financial transcripts" for 19 claims—or workers who attended Office Careers' program—provided by Office Careers. CP at 960. Financial transcripts "are individual listings of students, start and end dates of their programs, dollars billed to [DLI] by date, and total paid by [DLI]." CP at 960. DLI determined that in seven of the 19 cases, Office Careers overbilled DLI. The overbilling arose from instances of workers who never started their retraining programs or Office Careers' incorrect identification of student end dates. In those cases, DLI never

received the required tuition refunds from Office Careers. *See* WAC 490-105-130. DLI identified $25,434.50 in total overbilling.

> As a result of its findings, DLI concluded:

> The billing portion of this audit raises serious concerns about [Office Careers]'s billing practices. As a result, considering [DLI]'s fiduciary responsibility to the workers' compensation funds, we are initiating a second audit specifically focused on billing practices and [DLI] payments as a result, to ensure any overpayments are identified and any indicated action taken in response[.]

CP at 960. Further, based on the results of the first audit, DLI found that Office Careers did not maintain records sufficient to establish the required job placement rate found in WAC 296-19A-590, that Office Careers did not actually meet the required job placement rate for its students, and Office Careers "fail[ed] to show evidence of retraining workers to an employable level." CP at 962.

In May 2020, DLI issued an order and notice, ordering recoupment of $25,434.50 plus $10,867.50 in interest, for a total of $36,302 pursuant to RCW 51.48.260.[3] Additionally, DLI stated: "[DLI], exercising its discretion provided under RCW 51.32.095(2) and RCW 51.36.110(3), will approve no new retraining plans for injured workers involving Office Careers and the provider number will be terminated." CP at 951.

---

[3] RCW 51.48.260 states:

> Any person, firm, corporation, partnership, association, agency, institution, or other legal entity, but not including an industrially injured recipient of health services, that, without intent to violate this chapter, obtains payments under Title 51 RCW to which such person or entity is not entitled, shall be liable for: (1) Any excess payments received; and (2) interest on the amount of excess payments at the rate of one percent each month for the period from the date upon which payment was made to the date upon which repayment is made to the state.

Office Careers requested that DLI reconsider its May 2020 order and submitted additional documentation in support of its request. In January 2021, after consideration of the additional documentation, DLI affirmed the May 2020 order. In a January 2021 order and notice (January 2021 Order), DLI ordered that Office Careers "remit recoupment of $25,434.50 plus $11,892.70 interest accrued . . . for a total of $37,327.20." CP at 1017.

Office Careers appealed the January 2021 Order to the BIIA. In its cover letter, Office Careers stated that it did "not contest the *amount* of overpayment assessed in the First Audit," but argued that on the whole, Office Careers had been underpaid for its services by DLI. CP at 1003 (emphasis in original). In May 2021, the BIIA granted Office Careers' request to appeal the January 2021 Order.

2.      Second Audit

In August 2020, DLI commenced a second audit of Office Careers and specifically focused on Office Careers' billing practices. The audit period examined 430 workers who enrolled with Office Careers between January 5, 2015, and March 9, 2020. DLI did not include any cases that had been examined during the first audit.

The second audit concluded that Office Careers failed to consistently follow the "'[m]inimum requirements for student refunds' (WAC 490-105-130)"; did not attempt to refund DLI for any overpayments; and of the 430 worker cases examined, DLI discovered 48 worker claims where Office Careers had overbilled. CP at 985. Based on the results of the second audit, DLI issued an order and notice in March 2021 (March 2021 Order), ordering that Office Careers reimburse DLI a recoupment amount of $122,069.50, plus $42,559.37 in interest, for a total of $164,628.87.

In May 2021, Office Careers appealed the March 2021 Order to the BIIA. Office Careers requested that the BIIA consolidate the appeals of the first and second audits. In its appeal, Office Careers alleged that DLI had incorrectly calculated the billable amounts and failed to credit Office Careers for underpayments. In June 2021, the BIIA also granted Office Careers' request to appeal the March 2021 Order.

C.      PROCEDURAL HISTORY

The BIIA consolidated the two appeals.

1.       Motion for Partial Summary Judgment

In August 2022, DLI moved for partial summary judgment on the issue of DLI's decision to stop making referrals to Office Careers and to terminate Office Careers' provider number. Specifically, DLI argued that Office Careers (1) failed to maintain records in accordance with WAC 296-19A-560(14)[4] and WAC 296-19A-590[5] and (2) failed to meet the required 50 percent

---

[4] WAC 296-19A-560(14) provides that

> [w]hen a nonaccredited or unlicensed training provider seeks a provider number from the department, the provider must give the department all the following documentation, or its request will be denied:
>
> . . . .
>
> (14) Training providers that prepare students for obtaining employment, documentation of the training provider's completion rate and job placement rate, including the title, wages, and benefits obtained by graduates.

[5] WAC 296-19A-590(4) states that vocational programs "that prepare students for employment must maintain at least a thirty percent completion rate and fifty percent placement rate in jobs for which training was provided during the three quarters following graduation during the most recent fiscal year, July 1 through June 30."

job placement rate required by WAC 296-19A-590(4). DLI advanced its argument under an abuse of discretion standard.

In December 2022, Office Careers submitted a "notice of non-opposition" regarding DLI's motion for partial summary judgment. CP at 930. However, during the hearing on the motion, Office Careers argued that a different standard of review applied and that DLI's motion should be denied. Office Careers asked the Industrial Appeals Judge (IAJ) for a full hearing so Office Careers could "bring . . . evidence into the record" regarding the issue. CP at 60.

The IAJ noted that Office Careers' argument was unexpected in light of Office Careers' notice of non-opposition response filed with the BIIA. In response, Office Careers stated that it had filed a notice of non-opposition based on ongoing settlement negotiations, which subsequently broke down.

The IAJ granted DLI's motion for partial summary judgment on the issue of DLI's decision to stop making referrals to Office Careers and to terminate Office Careers' provider number. Office Careers filed a motion for reconsideration of the IAJ's grant of partial summary judgment, arguing for the first time that "the only evidence considered by the [IAJ] was unauthenticated, inadmissible hearsay." CP at 806. The IAJ denied the motion for reconsideration in a proposed decision and order. The IAJ wrote:

> On February 27, 2023, based on the pleadings of the summary judgment motion and response, and related oral argument, neither of which included any evidentiary objection to [DLI's] proffered evidence, nor motion to strike the evidence and included Office Career's [sic] only written response endorsing the propriety of the motion by its non-opposition, I granted the motion for summary judgment with respect to [DLI's] termination of Office Careers' provider number under RCW 51.36.110(3) and non-approval [of] any future retraining plans for Office Careers' vocational services under RCW 51.32.095(2).

In its post-hearing briefing, Office Careers contended that I should not have granted [DLI's] summary judgment motion because of the alleged deficiencies in the evidentiary foundations for the materials in support of its motion. But this is too little, too late. Before I ruled on the motion, Office Careers filed its one and only response pleading to the motion, advising me that it did not oppose me granting it. During oral argument, it made no objection to [DLI's] evidence on evidentiary grounds, and made no motion to strike any of the evidence. Under these circumstances, Office Careers waived its contention that the evidentiary foundations in support of the motion were insufficient.

CP at 757-58 (footnote omitted).

2. Hearing Testimony on Recoupment of Overpayments

During a hearing held in February and March 2023, the IAJ heard testimony regarding the remaining issue—whether DLI correctly assessed the recoupment amounts against Office Careers in the two audits. David Jordan, the executive director of Office Careers, and Richard Wilson, a DLI compliance manager, testified.

Jordan conceded that Office Careers made some billing errors. Specifically, the errors "had to do with cutoff dates when a student did not complete the program and a refund would be due at that point for any billings and sometimes it did not reflect when the cutoff happened." CP at 75. However, Jordan testified that any errors were unintentional and asserted there were other instances in which DLI underpaid Office Careers. Thus, according to Jordan, Office Careers' dispute with DLI was not that Office Careers owed refunds for the audit periods; rather, Office Careers did not agree on "the balance that's left over owed to the school" based on DLI's purported underpayment in other cases. CP at 104. Jordan also referenced the WACs guiding Office Careers' refund policy and described the information he used to make tuition calculations. In most cases, DLI's data and calculations matched that of Office Careers.

9

Wilson testified to DLI's process of paying vocational schools. Wilson also described the information needed to conduct audits—specifically, vocational school bills and information or documentation validating those bills. Wilson stated that one of the most important pieces of information to determine is when a worker stopped attending Office Careers' program. In several cases, in order to validate a worker's end date at Office Careers, DLI needed to cross-reference information submitted by Office Careers with various DLI data warehouses and other system databases that DLI uses to track worker claims. Wilson referred to the cross-referencing as DLI's "triangulation process." CP at 462.

In August 2023, the IAJ issued a proposed decision and order, affirming DLI's January 2021 Order and March 2021 Order.

3.      Petition for Review

In October 2023, Office Careers petitioned the BIIA for review, requesting that the BIIA reverse and revise the proposed decision and order "such that [Office Careers] is not required to reimburse [DLI] and that [DLI] reinstate [Office Careers'] service number." CP at 716.

In the petition for review, Office Careers argued for the first time that DLI's claims to overpayments fell outside RCW 51.36.240(1)(a)'s one-year statute of limitations. As such, Office Careers asserted that for the first audit, which was affirmed in the January 2021 Order, DLI was authorized to recover only overpayments made in the one year preceding the January 2021 Order— in other words, any overpayments made between January 2020 and January 2021. Because the first audit period covered July 2015 through June 2018, Office Careers contended that any of DLI's claims of overpayment from the first audit fell outside the one-year statutory recovery period.

10

Similarly, for the second audit, Office Careers argued that DLI could recover only overpayments made between March 2020 and March 2021 under the March 2021 Order.

Office Careers also argued that DLI's "triangulation" method to determine the amount of overpayment made to Office Careers failed to comply with WAC 490-105-130. Office Careers asserted that the "Proposed Decision and Order should be revised to reflect that [DLI] must comply with the WAC in determining the [worker] termination or withdrawal date and did not do so in this case." CP at 715.

The BIIA granted review of the IAJ's August 2023 proposed decision and order. In December 2023, the BIIA issued a decision and order (December 2023 Order), agreeing with the IAJ's August 2023 proposed decision and order and affirming DLI's January 2021 Order and March 2021 Order.

In its December 2023 Order, the BIIA stated that it "granted review solely to address a legal argument Office Careers made for the first time in its Petition for Review"; specifically, whether the one-year statute of limitations, as argued by Office Careers, applied. CP at 665. The BIIA concluded:

> We have long held that the purpose of RCW 5[1].32.240 is to recover benefits paid to injured workers, not overpayments to providers, which aren't benefits. Following our decisions in *In re Integrated Med. Examiners* and *In re Angela Gentsaryuk* we hold that the six year statute of limitations for breach of contract from RCW 4.16.040 applies to provider overpayments, rather than the one year limitation for worker benefits. That six-year statute of limitations applies to "[a]n action upon a contract in writing, or liability express or implied arising out of a written agreement . . ." [DLI] demanded the repayment within six years via an order, and is not barred by RCW 51.32.240 from seeking repayment for the assessed overpayments.

CP at 665-66 (second and third alterations in original) (footnotes omitted). The BIIA then made

the following conclusions of law (COL):

2.  [DLI] is entitled to partial summary judgment as a matter of law under CR 56.

3.  Under RCW 51.36.110, [DLI] properly terminated Office Careers' provider service number and determined it would not approve any further retraining programs offered by the provider under WAC 296-19A-590.

4.  The limitations period for [DLI] to seek recoupment of worker benefits found in RCW 51.32.240 doesn't apply to the overbilling committed by Office Careers during the audit period July 1, 2015, through June 30, 2018.

5.  For the period July 1, 2015 through June 30, 2018, [DLI] is entitled to reimbursement for over-billing by Office Careers in the amount of $25[,]434.50, plus interest, pursuant to RCW 51.48.260.

6.  For the period January 5, 2015, through March 9, 2020, [DLI] is entitled to reimbursement for over-billing by Office Careers in the amount of $122,069.50, plus interest, pursuant to RCW 51.48.260.

7.  The [DLI] Order and Notices dated January 29, 2021, and March 30, 2021, are correct and are affirmed.

CP at 667.

4.  Appeal to Superior Court

Office Careers sought review of the December 2023 Order in superior court. The superior

court affirmed. In a findings of fact and conclusions of law and judgment, the superior court

adopted the BIIA's findings of fact (FOFs) and COLs in the December 2023 Order. The FOFs

stated in pertinent part:

1.2.5  On August 31, 2022, [DLI] filed a motion for partial summary judgment in Docket No. 21 P0050, the appeal of [DLI's] January 29, 2021 order. On December 27, 2022, Office Careers filed a non-opposition response, effectively agreeing that [DLI] properly terminated its provider number because it failed to meet the requirements of WAC 296-19A and WAC 296-

19A-590. Pleadings and documents submitted by [DLI] and Office Careers demonstrate there is no issue of material fact regarding the propriety of [DLI's] termination of Office Careers' provider number and its decision to not approve any further retraining plans by Office Careers.

1.2.6 [DLI] sought recoupment of the overpayment in this appeal within six years of Office Careers and the [DLI] execution of a written contract.

CP at 1091-92. In its COLs, the superior court stated:

2.2 The Court adopts as its Conclusions of Law, and incorporates by this reference, the [BIIA]'s Conclusions of Law Nos. 1 through 7 of the December 18, 2023, Decision and Order.

2.3 The [BIIA]'s December 18, 2023, Decision and Order is affirmed.

2.4 [DLI's] January 29, 2021, and March 30, 2021, orders are correct and are affirmed.

CP at 1092.

Office Careers appeals.

ANALYSIS

Office Careers argues that the statute of limitations found in RCW 51.32.240(1)(a) limits DLI's recoupment of overpayments to one year. Office Careers also argues that the partial summary judgment decision regarding DLI's revocation of Office Careers' provider number and license requires reversal because DLI based its termination decision on the results of the audits, which were "time barred," and DLI failed to comply with WAC 296-19A-590. Br. of Appellant at 27. Finally, Office Careers requests attorney fees on appeal. We disagree with Office Careers' arguments and decline to award attorney fees on appeal.

A.    STANDARD OF REVIEW

In industrial insurance cases, the ordinary civil standards of review govern appeals from the superior court. RCW 51.52.140; *Alaska Airlines v. Spanjer*, 35 Wn. App. 2d 22, 34, 576 P.3d 567 (2025). We review the decision of the superior court rather than the decision of the BIIA. *Perez v. Dep't of Lab. & Indus.*, 28 Wn. App. 2d 916, 921, 542 P.3d 584 (2023), *review denied*, 2 Wn.3d 1033 (2024). "Our review is limited to evaluating whether substantial evidence supports the superior court's findings of fact and whether the superior court's conclusions of law flow from those findings." *Barreto Garcia v. Growers*, 24 Wn. App. 2d 885, 891, 523 P.3d 788 (2022).

Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the truth of the matter. *Perez*, 28 Wn. App. 2d at 921. "We review the record in the light most favorable to the party who prevailed in superior court"—here, DLI. *Id.* at 921.

B.    STATUTE OF LIMITATIONS

Office Careers argues that the statute of limitations for DLI to recoup overpayments to providers is found in RCW 51.32.240(1)(a), and RCW 51.36.110's specific reference to RCW 51.32.240(6) indicates the legislature's intent to establish a one-year recovery period. We disagree.

1.    Legal Principles

a.    Statutory interpretation

"'Statutory interpretations are questions of law reviewed de novo.'" *Id.* at 922 (quoting *Kustura v. Dep't of Lab. & Indus.*, 169 Wn.2d 81, 87, 233 P.3d 853 (2010)). Courts interpret statutes to give effect to the legislature's intent. *Dep't of Lab. & Indus. v. Slaugh*, 177 Wn. App. 439, 445, 312 P.3d 676 (2013), *review denied*, 180 Wn.2d 1007 (2014). "'[I]f the statute's

meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" *Bearden v. City of Ocean Shores*, 5 Wn.3d 1, 9, 570 P.3d 684 (2025) (alteration in original) (quoting *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

To determine a statute's plain meaning, courts "consider the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 405, 377 P.3d 199 (2016). However, if "'after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history.'" *Bearden*, 5 Wn.3d at 9-10 (quoting *Campbell & Gwinn*, 146 Wn.2d at 12). "Courts should 'avoid a literal reading if it would result in unlikely, absurd or strained consequences' because the statute's purpose 'should prevail over express but inept wording.'" *Id.* at 10 (quoting *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)).

b.      Industrial Insurance Act

Under the IIA, one of the primary purposes "is to enable [an] injured worker to become employable at gainful employment." RCW 51.32.095(1). Accordingly, DLI may provide vocational rehabilitation benefits to injured workers. RCW 51.32.095(6); *see generally* RCW 51.32.096.

To ensure the purposes of the IIA are met, DLI is authorized to conduct audits of vocational institutions that provide services to injured workers. RCW 51.36.100 (stating, "[t]he legislature finds and declares it to be in the public interest . . . that a proper regulatory and inspection program

be instituted in connection with the provision of . . . vocational, and other health services to industrially injured workers pursuant to Title 51 RCW"). Following an audit, DLI has the authority to approve or deny provider applications, terminate or suspend a provider's eligibility to participate as a provider, and "[p]ursue collection of unpaid overpayments and/or penalties plus interest accrued from health care providers pursuant to RCW 51.32.240(6)." RCW 51.36.110(2)-(4).

RCW 51.32.240(6), on which Office Careers relies, provides, in relevant part:

> The worker, beneficiary, or other person affected thereby shall have the right to contest an order assessing an overpayment pursuant to this section in the same manner and to the same extent as provided under RCW 51.52.050 and 51.52.060. In the event such an order becomes final under chapter 51.52 RCW and notwithstanding the provisions of subsections (1) through (5) of this section, the director, director's designee, or self-insurer may file with the clerk in any county within the state a warrant in the amount of the sum representing the unpaid overpayment and/or penalty plus interest accruing from the date the order became final.

RCW 51.32.240(1)(a), another statute relied on by Office Careers on appeal, provides:

> Whenever any payment of benefits under this title is made because of clerical error, mistake of identity, innocent misrepresentation by or on behalf of the recipient thereof mistakenly acted upon, or any other circumstance of a similar nature, all not induced by willful misrepresentation, the recipient thereof shall repay it and recoupment may be made from any future payments due to the recipient on any claim with the state fund or self-insurer, as the case may be. *The department or self-insurer, as the case may be, must make claim for such repayment or recoupment within one year of the making of any such payment or it will be deemed any claim therefor has been waived.*

(Emphasis added.)

2. RCW 51.32.240(1)(a) Does Not Apply

Office Careers argues that RCW 51.36.110's specific reference to RCW 51.32.240(6) supports RCW 51.32.240's overall applicability to DLI's ability to recoup overpayments. Specifically, Office Careers' argument relies on RCW 51.32.240(6)'s reference to the right of a

16

"worker, beneficiary, or other person" to contest orders assessing overpayments "to the same extent as provided under RCW 51.52.050 and 51.52.060," as well as on the phrase, "notwithstanding the provisions of subsections (1) through (5) of this section, the director, director's designee, or self-insurer may file . . . a warrant in the amount of . . . overpayment and/or penalty plus interest accruing from the date the order became final." Office Careers then looks to the one-year statute of limitations language in RCW 51.32.240(1)(a), which addresses the repayment or recoupment by DLI or the self-insurer of erroneously paid benefits. Office Careers contends that if the legislature did not intend the one-year statute of limitations to apply to providers, "it would have so stated." Br. of Appellant at 15.

DLI argues that RCW 51.32.240(1)(a) is not applicable because that statute applies only to overpayment of *benefits* to injured workers, not overpayment of *fees* to providers. DLI argues that its interpretation comports with the statutory scheme as a whole, citing to several other statutory provisions discussing benefits as specifically paid to workers.

To determine the applicability of RCW 51.32.240(1)(a), we must first begin with the plain language of the statute to ascertain its meaning. *Bearden*, 5 Wn.3d at 9. To do so, we consider the text of the provision, the context of the statute, related provisions, and the statutory scheme as a whole. *Lenander*, 186 Wn.2d at 405.

Here, RCW 51.32.240(1)(a) begins with the clause, "Whenever any payment of *benefits* under this title is made . . . ." (Emphasis added.) Thus, the plain language of RCW 51.32.240(1)(a) indicates that the subsection applies to "benefits," not other types of payments. The next question is whether Office Careers, as a provider of vocational services to injured workers, is a recipient of "benefits" as contemplated under the IIA.

The IIA does not define "benefits." *See generally* RCW 51.08 et seq. However, review of the statutory scheme suggests that the legislature intended "benefits" to mean payments or compensation to injured workers or their beneficiaries. RCW 51.32.010 provides: "Each worker injured in the course of his or her employment, or his or her family or dependents in case of death of the worker, shall receive compensation in accordance with this chapter." RCW 51.32.015 states in part: "The *benefits* of Title 51 RCW *shall be provided to each worker* receiving an injury, as defined therein, during the course of his or her employment and also during his or her lunch period as established by the employer while on the jobsite." (Emphasis added.)

Further, the IIA outlines various scenarios and fact patterns of when and how benefits may be paid. *See generally, e.g.*, RCW 51.32.045 (stating, "[a]ny worker or other recipient of benefits under this title . . . ."), .050 (stating, "[w]here death results from the injury, a surviving spouse of a deceased worker eligible for benefits under this title . . . ."), .067 ("If, after making an election under this subsection, a worker dies from a cause related to the injury during a period of permanent total disability, his or her beneficiaries shall receive benefits under RCW 51.32.050 (2) through (5)."), .095 (stating, "[a]n injured worker may not participate in vocational rehabilitation under this section if such participation would result in a payment of benefits as described in RCW 51.32.240(5)," and "[e]xcept as otherwise provided, the benefits provided for in this section and RCW 51.32.096 are available to any otherwise eligible worker regardless of the date of industrial injury"), .110 ("As required under RCW 51.36.070, any worker entitled to receive any benefits or claiming such under this title shall, if requested by the department or self-insurer, submit himself or herself for medical examination, at a place reasonably convenient for the worker."), .250 ("The benefits provided for in this section are available to any otherwise eligible worker regardless of

18

the date of industrial injury.").  In each of these provisions, the context makes clear that only injured workers or their beneficiaries, not health service providers, would receive benefits.

This interpretation is further bolstered by language used in provisions found in chapter 51.36 RCW, which discusses medical aid under the IIA.  For instance, RCW 51.36.080 provides, "All *fees and medical charges* under this title shall conform to the fee schedule established by the director . . . ." (Emphasis added.)  Indeed, RCW 51.36.100, which authorizes DLI to audit providers such as Office Careers, states, in relevant part:

> In order to . . . assure that the industrially injured worker receives such services as are paid for by the state of Washington, the acceptance by the industrially injured worker of such services, and *the request by a provider of services for reimbursement for providing such services*, shall authorize the director of the department of labor and industries . . . to inspect and audit all records in connection with the provision of such services.

(Emphasis added.)

RCW 51.32.095 directly addresses vocational rehabilitation services—services that Office Careers provided.  RCW 51.32.095(6)(a) states:

> Except as provided in (b) of this subsection, *costs* for *vocational rehabilitation benefits* allowed by the supervisor or supervisor's designee under subsection (1) of this section *may include the cost* of books, *tuition, fees*, supplies, equipment, transportation, child or dependent care, and other necessary expenses *for any such worker* in an amount not to exceed $3,000 in any 52 week period, and the cost of continuing the temporary total disability compensation under RCW 51.32.090 while the worker is actively and successfully undergoing a formal program of vocational rehabilitation.

(Emphasis added.)  Here again, the worker is the recipient of the "vocational rehabilitation benefit," not the provider of vocational rehabilitation services.  Indeed, RCW 51.32.095 expressly identifies a vocational program's tuition and fees as "costs."  Thus, DLI's payments to Office

Careers are more properly characterized as "costs," "reimbursements," or "fees" and not "benefits."

Moreover, RCW 51.36.110(4), which addresses the audit of health care providers, does not reference RCW 51.32.240 generally; rather, it explicitly references subsection (6), which is procedural in nature. RCW 51.32.240(6) outlines that an individual may contest an order assessing an overpayment and then how DLI may collect on an overpayment, "notwithstanding the provisions of subsections (1) through (5)."

To support its argument that the one-year statute of limitations in RCW 51.32.240(1)(a) applies, Office Careers cites to a superior court case, *Gentsaryuk v. Department of Labor and Industries*,[6] wherein the superior court found that DLI was barred from recovering payments made to a DLI translator based on the one-year statute of limitations in RCW 51.32.240(1)(a). But *Gentsaryuk* is neither binding nor persuasive.

First, a superior court's findings of fact and conclusions of law are not legal authority and have no precedential value. *Bauman v. Turpen*, 139 Wn. App. 78, 87, 160 P.3d 1050 (2007). Second, the circumstances in *Gentsaryuk* are not analogous. The plaintiff, Angela Gentsaryuk, was a DLI contractor who provided translation services for DLI and at issue was whether she fraudulently billed DLI for those services. There was no issue regarding recoupment of overpayments to a service provider in *Gentsaryuk*. *See generally In re Gentsaryuk*, No. 13 P0023, 2015 WL 5818109 (Wash. Bd. Indus. Ins. App. Sep. 22, 2015).

Further, Office Careers neglects to address RCW 51.48.260, which provides:

---

[6] No.16-2-01876-34 (Thurston County Super. Ct., Wash. 2017).

> Any person, firm, corporation, partnership, association, agency, institution, or other legal entity, *but not including an industrially injured recipient of health services*, that, without intent to violate this chapter, obtains payments under Title 51 RCW to which such person or entity is not entitled, *shall be liable for: (1) Any excess payments received; and (2) interest on the amount of excess payments at the rate of one percent each month for the period from the date upon which payment was made to the date upon which repayment is made to the state.*

(Emphasis added.) RCW 51.48.260 applies to any person or institution and excludes injured workers. Thus, RCW 51.48.260 applies to Office Careers. It is notable that the statute (1) does not include a time limit on an entity's liability and (2) excludes workers from that lack of limitation—all suggesting a legislative intent that the one-year statute of limitations in RCW 51.32.240(1)(a) applies only to benefits paid to injured workers.

In its reply brief and at oral argument, Office Careers argued that RCW 51.32.240(4)(d) explicitly excludes health service providers from the meaning of "recipient" in that subsection only. Wash. Ct. of Appeals oral argument, *Office Careers v. Dep't of Lab. & Indus.*, No. 60252-1-II (Jan. 30, 2026), at 5 min., 31 sec. through 5 min., 55 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-2-court-of-appeals-2026011570/?eventID=2026011570. Accordingly, Office Careers asserts that health service providers fall within the definition of "recipient" in RCW 51.32.240's other subsections, and that "the statute should be read as inclusive of [h]ealth [s]ervice [p]roviders, unless expressly excluded." Reply Br. of Appellant at 8. We are not persuaded.

RCW 51.32.240(4) provides:

> Whenever any payment of benefits under this title has been made *pursuant to an adjudication by the department or by order of the board or any court* and timely appeal therefrom has been made where the final decision is that any such payment was made pursuant to an erroneous adjudication, the recipient thereof shall repay it

21

and recoupment may be made from any future payments due to the recipient on any claim whether state fund or self-insured.

(Emphasis added.) RCW 51.32.240(4)(d) states: "For purposes of this subsection, 'recipient' does not include health service providers whose treatment or services were authorized by the department or self-insurer." Thus, under the plain language of RCW 51.32.240(4), that statute applies only to payment of benefits made *pursuant to an order* that is later overturned, which is not the case here. Accordingly, RCW 51.32.240(4) is simply not applicable.

Even if RCW 51.32.240(4) applied, subsection (4) contemplates that the recipient—in other words, the injured worker—*actually received* the benefits. If the receipt of those benefits *by the injured worker* was erroneous, then the injured worker is liable for repayment of those benefits to which he or she was not entitled. If the injured worker fails to repay those benefits, RCW 51.32.240(4) authorizes DLI to recoup the benefits from any future benefit payouts that the injured worker may be entitled to. RCW 51.32.240(4)(d) simply states that *in this circumstance*, DLI cannot recoup payments made to health service providers.

Here, the record shows that DLI's overpayments to Officer Careers arose from instances of workers who never started their retraining programs or where Office Careers incorrectly identified the student end dates. Thus, the workers in this case were properly entitled to benefits, but the worker either never received the benefit or some of their benefit was erroneously paid to Office Careers. Therefore, Office Careers' argument regarding RCW 51.32.240(4)(d) is unavailing.

Given the language of RCW 51.32.240(1)(a), the context of the statute, and the statutory scheme as a whole, we hold that "benefits" as described in RCW 51.32.240(1)(a) means payments

or compensation to injured workers or their beneficiaries. *Lenander*, 186 Wn.2d at 405.

Accordingly, RCW 51.32.240(1)(a) does not apply to health service providers such as Office

Careers. Thus, contrary to Office Careers' assertion, DLI is not subject to a one-year statute of

limitations found in RCW 51.32.240(1)(a) when recouping overpayments made to health service

providers.[7]

C.      TERMINATION OF PROVIDER NUMBER

Office Careers argues that the partial summary judgment order[8] in favor of DLI, which

affirmed DLI's termination of Office Careers' provider number, should be reversed. Office

Careers contends reversal is warranted because "[t]he data used for the audit was . . . waived"

based on the one-year statute of limitations and DLI failed to comply with WAC 296-19A-590 in

---

[7] Because we hold that RCW 51.32.240(1)(a) does not apply to health service providers, we do not address Office Careers' argument that DLI has waived its rights to collect on overpayments outside the one-year statute of limitations.

DLI also argued that under RCW 4.16.160, it is not subject to a statute of limitations when recouping overpayments from providers because, in such cases, it acts in a sovereign capacity. In the alternative, DLI argued that a six-year statute of limitations, found in RCW 4.16.040, applies. Office Careers responded by asserting that the BIIA rejected the applicability of RCW 4.16.160 because DLI acted in a proprietary role. We do not address the parties' arguments regarding RCW 4.16.160 or RCW 4.16.040 except to note that both parties agreed at oral argument that even if RCW 4.16.040 applies, all amounts sought in recoupment falls within the six-year statute of limitations of that statute. Wash. Ct. of Appeals oral argument, *Office Careers v. Dep't of Lab. & Indus.*, No. 60252-1-II (Jan. 30, 2026), at 19 min., 1 sec., 26 min., 48 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-2-court-of-appeals-2026011570/?eventID=2026011570.

[8] We note that Office Careers fails to mention any summary judgment standards in either of its briefs on appeal. Instead, Office Careers simply asserts, "Insofar as the revocation of licensure based on the results of the audits, which are time barred, the revocation of [Office Careers'] licensure also requires reversal." Br. of Appellant at 27. However, because the superior court adopted the BIIA's conclusion that DLI was entitled to partial summary judgment on the issue, we address Office Careers' argument within a summary judgment context.

its audits. Br. of Appellant at 28. Additionally, Office Career asserts that DLI violated WAC 490-105-130 when it engaged in the "'[t]riangulation'" method. Br. of Appellant at 30. We disagree.

1.      Legal Principles

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Romo v. Dep't of Lab. & Indus.*, 92 Wn. App. 348, 353-54, 962 P.2d 844 (1998) (quoting CR 56(c)). We review summary judgment orders de novo. *Spohn v. Dep't of Lab. & Indus.*, 20 Wn. App. 2d 373, 378, 499 P.3d 989 (2021).

WAC 296-19A-590, which addresses the criteria providers must meet to maintain provider status, states:

> (1) All accredited or licensed training providers with a department provider number must maintain their accreditation or licensure status.
>       (2) All approved nonaccredited or unlicensed training providers with department provider numbers must conform to all requirements in chapter 296-19A WAC, on an ongoing basis.
>       (3) Failure to maintain accreditation, licensure, or conformance to the requirements of chapter 296-19A WAC may result in termination of the provider number.
>       (4) Programs that prepare students for employment must maintain at least a thirty percent completion rate and fifty percent placement rate in jobs for which training was provided during the three quarters following graduation during the most recent fiscal year, July 1 through June 30.

WAC 490-105-130 addresses minimum requirements for student refunds from vocational schools. "Refunds must be calculated using the official date of [student] termination or withdrawal and the date designated on the current enrollment agreement executed with the student." WAC 490-105-130(3). WAC 490-105-130(2) provides how to determine a student's termination or

withdrawal date. Additionally, WAC 490-105-130(5) outlines to what extent a vocational school may retain a registration fee or partial tuition. For instance, a "school may retain an established registration fee equal to ten percent of the total tuition cost, or one hundred dollars, whichever is less, if the applicant cancels after the fifth business day after signing the contract or making an initial payment." WAC 490-105-130(5)(c). Alternatively,

> [i]f training is terminated after the student enters classes, the school may retain the registration fee established under (c) of this subsection, plus a percentage of the total tuition as described in the following table:

| If the student completes this amount of training: | The school may keep this percentage of the tuition cost: |
|---|---|
| One week or up to 10%, whichever is less | 10% |
| More than one week or 10% whichever is less but less than 25% | 25% |
| 25% through 50% | 50% |
| More than 50% | 100% |

WAC 490-105-130(5)(d).

2.    DLI Entitled to Partial Summary Judgment

Office Careers first argues that DLI's audits failed to comply with WAC 296-19A-590(4). Essentially, Office Careers asserts that the audits did not evaluate completion and job placement rates of workers "in jobs for which training was provided during the three quarters following graduation during the most recent fiscal year, July 1 through June 30." WAC 296-19A-590(4). According to Office Careers, because the first audit covered 2015 through 2018, but the order assessing the overpayment was not issued until January 2021, "[t]he first audit would have required evaluation of the completion rate and placement rate for the fiscal year July 1 through June 30

prior to January 29, 2021." Br. of Appellant at 28. Therefore, according to Office Careers, because the statute of limitations for recovery is one year, DLI has waived any claims supporting termination of its provider number based on the first audit. Office Careers advances the same argument for the second audit.

However, when DLI first moved for partial summary judgment, Office Careers filed a notice of non-opposition. Although Office Careers did later oppose DLI's motion for partial summary judgment at the hearing, both the IAJ and BIIA determined that Office Careers failed to provide any documentation or pleadings demonstrating any issue of material fact. The superior court affirmed the BIIA. Indeed, on appeal, Office Careers does not point to any evidence in the record negating the findings of the proceedings below. Office Careers makes only legal arguments, which for the reasons discussed above, are unpersuasive. Therefore, Office Careers fails to demonstrate any issue of material fact nor does it show that it is entitled to judgment as a matter of law. Also, for the reasons discussed above, the one-year statute of limitations found in RCW 51.32.240(1)(a) is not applicable; thus, Office Careers' argument regarding evaluation of data arising only within the one-year period is unavailing.

Moreover, Office Careers fixates upon WAC 296-19A-590(4) to the exclusion not only of preceding subsections within WAC 296-19A-590, but also explicit statutory language found in the IIA. For instance, WAC 296-19A-590(2) provides: "All approved nonaccredited or unlicensed training providers with department provider numbers must conform to all requirements in chapter 296-19A WAC, *on an ongoing basis*." (Emphasis added.) Further, WAC 296-19A-590(3) states: "Failure to maintain accreditation, licensure, or *conformance to the requirements of chapter 296-19A WAC may result in termination of the provider number*." (Emphasis added.) Thus,

completion rates and job placement rates are not the only factors that determine whether a provider maintains its provider status. Indeed, WAC 296-19A-560, for instance, lists required documentation a vocational school must provide to DLI for approval to provide vocational services to workers under the IIA. Should the vocational school fail to provide the required documentation, it may result in the termination of its provider number. WAC 296-19A-590(2), (3).

Even if WAC 296-19A-590(4) was the sole factor in determining whether a provider maintains its provider number, the record shows Office Careers failed to meet the requirements of WAC 296-19A-590(4). For instance, in the time period covered by the first audit, Office Careers demonstrated a job placement rate of only 3.9 percent, whereas WAC 296-19A-590(4) provides vocational schools must "maintain at least a thirty percent completion rate and fifty percent placement rate in jobs for which training was provided." Accordingly, the record shows Office Careers failed to conform with WAC 296-19A-590(4)'s requirement. *See also* WAC 296-19A-590(2).

When DLI conducts audits of providers, it is authorized "to inspect and audit *all records in connection with the provision of such services.*" RCW 51.36.100 (emphasis added); *accord* RCW 51.36.110(1) (stating, DLI "may examine all records, or portions thereof, including patient records, for which services were rendered by a health services provider and reimbursed by the department"). Therefore, contrary to Office Careers' argument, DLI is not limited in what data it may use in its audits.

Office Careers next argues that DLI "failed to comply with statutory law in determining the termination or withdrawal date to calculate overpayments" and failed to comply with WAC 490-105-130. Br. of Appellant at 29. Specifically, Office Careers contends that the

"'triangulation' method" used by DLI to determine a worker's termination or withdrawal dates is inconsistent with WAC 490-105-130. Br. of Appellant at 33.

WAC 490-105-130(2) provides how the vocational school must determine a student's "date of termination or withdrawal." Then, WAC 490-105-130(5)(d) outlines the minimum amount a vocational school must refund a student should the student discontinue a program. Within WAC 490-105-130, there are no constraints upon DLI's actions in determining a worker's termination or withdrawal date, nor does Office Careers identify a *statute* limiting the data DLI may utilize.

Moreover, the record shows that Office Careers provided little or incomplete information to DLI for the audits; thus, DLI had to resort to "triangulation" to validate a student's termination or withdrawal date. This was not in violation of WAC 490-105-130—it was simply a process of verification to ensure compliance with the rule.

For the reasons discussed above, we affirm partial summary judgment in favor of DLI regarding the termination of Office Careers' provider number.

D.     ATTORNEY FEES ON APPEAL

Office Careers requests an award of attorney fees on appeal pursuant to RCW 4.84.350 and RCW 51.52.130. Office Careers also requests that we reverse the $200 in statutory attorney fees awarded to DLI by the superior court. We decline to do so.

Under RAP 18.1, we may award attorney fees to a party if "applicable law grants to a party the right to recover reasonable attorney fees or expenses." RAP 18.1(a). RCW 4.84.350(1) provides that "[e]xcept as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees."

For the reasons discussed in the preceding sections, we affirm the superior court. Because we affirm the superior court, Office Careers is not the prevailing party. Accordingly, we decline to award attorney fees on appeal to Office Careers or reverse the superior court's attorney fee award to DLI.

CONCLUSION

We affirm the superior court.

_____
Lee, J.

We concur:

_____
Maxa, P.J.

_____
Che, J.